# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ROBERTO CARRUCINI, JR.,** ) | |
| ) | |
| Petitioner, ) | Case No. 7:19CV00861 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **WARDEN OF U.S.P. LEE,** ) | By: James P. Jones |
| ) | United States District Judge |
| Respondent. ) | |

*Roberto Carrucini, Jr., Pro Se Petitioner; S. Cagle Juhan, Assistant United States Attorney, Charlottesville, Virginia, for Respondent.*

The petitioner, Roberto Carrucini, Jr., a federal inmate confined in this judicial district and proceeding pro se, filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. Carrucini contends that his conviction and sentence must be vacated in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019. After review of the record and the parties' submissions, I conclude that the respondent's Motion to Dismiss must be granted.

I.

On June 30, 2011, a grand jury in the United States District Court for the District of Massachusetts returned a one-count Indictment, charging Carrucini with possession of a firearm and ammunition by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Gov't Br. Supp. Ex. 1, Indictment, ECF No. 9-1. Carrucini

had previously been arrested on, and pled guilty to, state charges stemming from the same incident.

On July 24, 2012, Carrucini pled guilty to the single count in the Indictment. The district judge explained to Carrucini the elements the government would have to prove beyond a reasonable doubt in order to obtain a conviction: (1) that Carrucini was in possession of a firearm and ammunition knowingly; that the firearm and ammunition were in and affecting interstate commerce; and (3) that Carrucini had been previously convicted of a crime punishable by a term of more than one year. The Assistant United States Attorney described the minimum penalties Carrucini faced. After summarizing the facts giving rise to the case, the AUSA stated that, had the case gone to trial, the government would also have proven that "Carrucini has been convicted of several felony offenses going back from 2002 to 2007." *Id*. at Ex. 2, Plea Hr'g Tr. 19, ECF No. 9-2. Carrucini agreed that he understood the nature of the charge. He accepted responsibility for the allegations as set forth by the government. The court found that Carrucini understood the nature of the charge and potential penalties he faced, that he was competent to enter a plea, and that there was a sufficient basis in the facts as presented to warrant a finding of guilt of the offense beyond a reasonable doubt.

In advance of sentencing, the probation office prepared a Presentence Investigation Report ("PSR") that included a detailed description of the offense conduct:

> On May 21, 2011, at approximately 2:00 am two Springfield Police Department (SPD) officers were dispatched to 40 Avon Place in Springfield because of the activation of the "Shot Spotter" system in that area. Officers Scott Richard and Matthew Benoit arrived at the corner of Maple Street and Avon Place and were told there were two more "Shot Spotter" activations in the area at 178 Maple Street and 95 Central Street. The officers were flagged down by a black female who said she just saw a heavyset Hispanic male with a shaved head, wearing a black sweatshirt shooting a pistol in the air "cowboy style" in front of 178 Maple Street. The woman said she saw the male walking down Central Street towards Main Street with a second male. Given the circumstances the officers did not obtain biographical information from the female before continuing their investigation and never saw her again.
>
> The officers then headed to Central Street, a short distance from where they spoke to the female, and observed two Hispanic males in front of 65 Central Street. One of the two men matched the description given by the female witness and was subsequently identified as Roberto Carrucini, Jr. The officers exited the cruiser and approached the men. Immediately upon seeing the officers, Carrucini put his right hand into his right front pants pocket and aggressively struggled to remove something from the pocket, and failed to follow the officers [sic] repeated instructions to take his hand out of his pocket. Fearing that Carrucini might be attempting to get a firearm out of his pocket, the officers approached Carrucini. They observed that he had his right hand on the grip of a handgun, refused to release his grip on the gun, and struggled with the officers. He was eventually subdued and handcuffed on the ground. The officers then removed a Taurus model PT 140 PRO .40 caliber handgun bearing serial number SZE20178 from Carrucini's pocket. The slide to the semi-automatic handgun was in the locked back position consistent with a gun which had been fired until its magazine was emptied of ammunition. The officers observed that the gun smelled like gun powder as if it had recently been fired.

> The officers searched Carrucini incident to his arrest and found one round of .40 caliber ammunition in his right front watch pocket. Several hours later officers returned to the locations where the "Shot Spotter" had indicated shots were fired and recovered two brass ammunition casings in front of 178 Maple Street.
>
> Alcohol Tobacco and Firearm Special Agent Brian Person would have testified that the Taurus .40 caliber handgun and the ammunition were both manufactured outside of Massachusetts. He would also testify that the handgun is a firearm as defined under federal law and the bullet meets the federal definition of ammunition.

*Id*. at Ex. 11, PSR ¶¶ 8–10, ECF No. 9-11.

The PSR found that under the U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(a)(2), Carrucini's base offense level was 24 because he committed the offense after having sustained two felony convictions of either a crime of violence or a controlled substance offense. Carrucini received a downward adjustment of three levels for acceptance of responsibility, which brought his offense level down to 21. He had 18 criminal history points, establishing a criminal history of VI. Therefore, Carrucini's advisory Guideline range would ordinarily have been 77–96 months.

Carrucini, however, was subject to the Armed Career Criminal provisions of 18 U.S.C. § 924(e) and USSG § 4B1.4 because (1) the offense of conviction was a violation of 18 U.S.C. § 922(g); and (2) he had at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions. Therefore, pursuant to USSG § 4B1.4(b)(3), his base offense level was

33. Subtracting the three-level reduction for acceptance of responsibility yielded an Armed Career Criminal offense level of 30. Combined with his criminal history category of VI, Carrucini's sentencing range under the advisory guidelines would have been 168–210 months, absent the provisions of the Armed Career Criminal Act ("ACCA").

> The ACCA provides, in relevant part:
>
> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1). Thus, the statute mandated a minimum sentence of 15 years' incarceration and set the minimum advisory guideline range at 180 months.

Carrucini appeared for sentencing on November 28, 2012. Pursuant to the ACCA, the court sentenced Carrucini to a term of imprisonment of 180 months, to be followed by three years of supervised release. The court credited Carrucini with the time he had served since his arrest in Springfield and ordered that his federal sentence run concurrently with the state sentence he was already serving.

Carrucini appealed. After counsel filed an *Anders* brief, Carrucini filed a supplemental pro se brief in which he alleged that trial counsel had been ineffective for a number of reasons, including failure to challenge some of his previous convictions as overstated, failure to obtain documents relating to the predicate

crimes used to find him subject to the ACCA, failure to provide him with a copy of the PSR prior to sentencing, failure to ensure that he would receive credit for time already served, and failure to ensure that his state and federal sentences ran concurrently. Go'vt Br. Supp. Ex. 6, Pro Se Brief 2–4, ECF No. 9-6. The court found that Carrucini was properly subject to the ACCA, that his claims were not cognizable on direct appeal, and that any error did not affect his substantial rights or impair the fairness of the proceeding. *Id*. at Ex. 7, J. at 1–2, ECF No. 9-7. The First Circuit, therefore, affirmed the decision below.

In September 2014, Carrucini filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in the sentencing court. *Id*. at Ex. 8, § 2255 Mot., ECF No. 9-8. Carrucini alleged that counsel was ineffective during the sentencing phase for essentially the reasons he had raised on direct appeal. The court denied the motion on January 14, 2015. *Id*. at Ex. 10, Mem. & Order, ECF No. 9-10.

In June 2020, Carrucini sought leave from the First Circuit to file a second or successive motion based on *Rehaif*. However, he subsequently moved to withdraw that request, which was granted by the court of appeals. *United States v. Carrucini*, No. 20-1630 (1st Cir. July 22, 2020).

Carrucini has not responded to the respondent's Motion to Dismiss, although the time to respond has long passed. Accordingly the matter is ripe for decision.

II.

Generally, federal prisoners "are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to 28 U.S.C. § 2255." *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). However, the "savings clause" of § 2255 allows a federal prisoner to seek relief under 28 U.S.C. § 2241 if he can show that § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). The requirements of the savings clause are jurisdictional. *United States v. Wheeler*, 886 F.3d 415, 425–26 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1318 (2019). Thus, unless the petitioner meets these requirements, a district court may not entertain his § 2241 petition that challenges the validity of a federal conviction or sentence. *Id.* at 426.

The Fourth Circuit has found that § 2255 is inadequate and ineffective to test the legality of a *conviction* when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000).

In *Wheeler*, the Fourth Circuit outlined conditions in which the savings clause may be used to challenge an allegedly unlawful *sentence*. The court held that § 2255

is inadequate and ineffective to test the legality of a sentence when all four of the following requirements are met:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

886 F.3d at 429.

Carrucini's § 2241 petition, liberally construed, alleges these three grounds for relief under *Jones*, *Wheeler* and the savings clause: (a) the government's failure to include the penalty provision related to 18 U.S.C. § 922(g), 18 U.S.C. § 924(a)(2), in the Indictment precluded the court from exercising the authority to hold the petitioner criminally liable; (b) the government's presentment was misleading and circumvented the burden of proof because it omitted the status requirement of § 922(g); and (c) Carrucini stands convicted of an erroneous interpretation of the statute, creating a separation of powers violation, because the court attempted to fill in what the government left out. Carrucini bases each of these claims on the Supreme Court's decision in *Rehaif*, arguing that this decision has rendered his conviction and sentence fundamentally defective. The respondent argues that Carrucini has not stated facts showing that I have jurisdiction under *Jones* and

*Wheeler* and the savings clause to address his claims on the merits under § 2241. I agree.

In *Rehaif*, the Supreme Court addressed the status requirement of 18 U.S.C. § 922(g). Section 922(g) provides that it shall be unlawful for certain individuals to possess firearms and lists nine categories of individuals subject to the prohibition, including felons. A separate provision, § 924(a)(2), adds that anyone who *knowingly* violates the prohbition shall be fined or imprisoned for up to 10 years. The Supreme Court held that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif*, 139 S. Ct. at 2194.

Carrucini's arguments with respect to his claims overlap and are sometimes difficult to follow. He appears to argue first that the government omitted the penalty provision, § 924(a)(2), from the Indictment, thereby failing to provide notice of the crime to which he was actually pleading guilty and precluding the government from punishing him for the § 922(g) violation. As a result, his rights under the Sixth, Eighth, and Fourteenth Amendments were violated. Next, the government's omission of the knowledge element circumvented the burden of proof beyond a reasonable doubt and led him to forgo his Sixth Amendment right to a jury trial based on a "less stringent" version of the statute. Pet'r's Mem. 3, ECF No. 1-1. Further,

"[w]hen the government snatched/omitted elements from the statute, they created law." *Id.* at 4. Lastly, the court compounded the separation of powers violation by instructing beyond its authority. Specifically, the court imported language from § 924(a)(2) into § 922(g)(1) and applied "knowingly" to possession of the firearm and ammunition, beyond what the government presented. *Id.* By doing so, the court "remixed § 922(g)(1) according to an interpretation that is obsolete," after *Rehaif*. *Id.* According to Carrucini, had the government, the court, and defense counsel presented him with all the elements of §§ 922(g)(1) and 924(a)(2), he would have exercised his right to a jury trial. *Id*. at Carrucini Aff., ECF No. 1-1.

There are two problems with Carrucini's contentions. First, he is clearly presenting constitutional arguments, which have no place within the *Jones*/*Wheeler* framework. *See Jones*, 226 F.3d at 333–34; *see also Wheeler*, 886 F.3d at 429. *Jones* and *Wheeler* both involved statutory, not constitutional, decisions. Carrucini appears to recognize this fact, as he argues that § 2255 is inadequate and ineffective because at the time of his appeal and first § 2255 motion, settled law established the legality of his conviction and sentence and, subsequently, the Supreme Court's decision in *Rehaif* changed the interpretation of substantive — not constitutional — law and said interpretation was not "newly discovered." *Id*. at Pet. Mem. 1, ECF No. 1-1; *see also* 28 U.S.C. § 2255(h)(2).

Second, Carrucini cannot meet the conditions set forth in *Jones* in order to utilize § 2255(e)'s savings clause and challenge his conviction pursuant to § 2241. The Fourth Circuit has held that *Rehaif* abrogated prior circuit precedent. *United States v. Lockhart*, 947 F.3d 187, 196 (4th Cir. 2020) (citing *United States v. Langley*, 62 F.3d 602 (4th Cir. 1995), *abrogated by Rehaif*, 139 S. Ct. 2191). Thus, Carrucini has satisfied the first prong of the *Jones* test.

Carrucini, however, cannot satisfy the second *Jones* requirement. Since *Rehaif*, several courts within the Fourth Circuit, including this court, have held that *Rehaif* did not change substantive law if the conduct for which the petitioner was convicted is still illegal. *See, e.g.*, *Erby v. Breckon*, No. 7:18-cv-00588, 2020 WL 1443154, at *7 (W.D. Va. Mar. 24, 2020) (collecting cases); *Swindle v. Hudgins*, No. 5:19-cv-300, 2020 WL 469660, at *2 (N.D. W. Va. Jan. 29, 2020) ("Here, the crimes for which petitioner was convicted remain criminal offenses; accordingly, he cannot satisfy the second prong of *Jones*."); *Taylor v. Huggins*, No. 5:19-CV-291, 2019 WL 6481799, at *3 (N.D. W. Va. Nov. 5, 2019) ("Even if Petitioner satisfied the first and third elements of *Jones*, the crime for which he was convicted remains a criminal offense, and therefore, he cannot satisfy the second element of *Jones*."), *adopted by* 2019 WL 6467823 (N.D. W. Va. Dec. 2, 2019); *Moss v. Dobbs*, No. 8:19-cv-02280-JMC-JDA, 2019 WL 7284989, at *9 (D.S.C. Sept. 23, 2019) ("[T]he savings clause test in *Jones* requires that subsequent to a prisoner's direct appeal and

first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal. Here, no such change occurred."); *accord United States v. Withee*, No. 18-163-JJM-LDA, 2020 WL 2557197, at *3 (D.R.I. May 20, 2020) (rejecting the petitioner's argument that elements of felon in possession of firearm in furtherance of a drug trafficking crime were not present in his case post-*Rehaif*); *Edwards v. Warden, FCI Berlin*, No. 19-cv-01271-JD, 2020 WL 2404886, at *2 (D.N.H. May 12, 2020) (stating, post-*Rehaif*, that "[T]he savings clause applies when, based on a new statutory interpretation by the Supreme Court, the petitioner is no longer guilty of the crime of conviction. Edwards, however, has not shown that occurred in his case." (citation and footnote omitted)). In Carrucini's case, it is still illegal for felons, among others, to possess weapons. Nor has Carrucini argued that he did not possess a weapon. *See, e.g.*, *United States v. Mayo*, No. 4:12cr00032-003, 2020 WL 2476167, at *2 (W.D. Va. May 13, 2020) (noting, in context of procedural default of a *Rehaif* claim, that "Petitioner has made no argument that he did not commit the crime alleged, and the record is devoid of any facts to support such an argument."). Therefore, Carrucini cannot meet the second *Jones* requirement and, accordingly, cannot make use of the savings clause to challenge the validity of his conviction under § 922(g).

For the stated reasons, Carrucini has not demonstrated under the requirements of *Jones* and *Wheeler* that § 2255 is inadequate and ineffective to test the legality of

his conviction and sentence.  Consequently, this court has no jurisdiction to address the merits of his claims under § 2241.  I will grant the Motion to Dismiss and dismiss Carrucini's claims without prejudice for lack of jurisdiction.

A separate Final Order will be entered herewith.

DATED:   February 8, 2021

/s/  JAMES P. JONES
United States District Judge